UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN WHITAKER,

    Plaintiff,

  v.

CENTRAL INTELLIGENCE AGENCY,
*et al.*,

    Defendants.

Civil Action No. 12-316 (CKK)

**MEMORANDUM OPINION**
(August 15, 2014)

    Plaintiff Stephen Whitaker has filed suit against Defendants the Central Intelligence Agency, the United States Department of Defense, and the United States Department of State challenging Defendants' processing of his requests pursuant to the Freedom of Information Act and the Privacy Act. By its previous Order and Memorandum Opinion in this case, this Court granted in part and denied in part Defendants' [5] Motion for Summary Judgment. *See* Order, ECF No. [24]; Mem. Op., ECF No. [25]. In response to this ruling, Defendants the Central Intelligence Agency and the United States Department of State (the only remaining Defendants in this case) have filed the present [28] Renewed Motion for Summary Judgment. In response to this filing, Plaintiff has filed a [29] Notice of Non-Opposition to Defendants' Renewed Motion for Summary Judgment. Upon consideration of the pleadings[1], the relevant legal authorities, and

---

[1] Complaint, ECF No. [1] ("Compl."); Defs.' Mot. for Summ. J., ECF No. [5] ("Defs.' MSJ"); Errata, ECF No. [11]; Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. [14-1] ("Pl.'s Opp'n"); Defs.' Reply Mem. in Supp. of Defs.' Mot. for Summ. J., ECF No. [20] ("Defs.' Reply"); Notice of Supplemental Authority, ECF No. [21]; Notice of Filing Document for *In Camera* Review, ECF No. [23]; Defs.' Renewed Mot. for Summ. J., ECF No. [28] ("Defs.'

the record as a whole, the Court GRANTS Defendants' [28] Renewed Motion for Summary Judgment. Accordingly, this matter is DISMISSED WITH PREJUDICE.

# I. BACKGROUND

## A. Factual Background

Between January 2008 and January 2012, Plaintiff filed a series of requests with Defendants pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. These requests sought records pertaining to the disappearance of a DC-3 airplane, three other planes, Harold Whitaker (Plaintiff's father) and four other individuals, the United States Army's investigation into the disappearance of the plane, the Plaintiff himself, and the Plaintiff's previous FOIA requests. The details of these requests are set out below.

### 1. CIA

On February 15, 2010, Plaintiff sent a FOIA request to the CIA requesting information "relat[ing] in any way to five individuals," including Plaintiff's father, Harold W. Whitaker, and "four DC-3 aircraft." *See* Defs.' MSJ, Ex. A (Declaration of Martha M. Lutz, Information Review Officer, Director's Area, Central Intelligence Agency) ("Lutz Decl.") ¶ 9; Compl. at 5. Plaintiff defined the scope of his request to include any information that would reveal whether "any of these persons or aircraft were later found to be employed or contracted by the CIA for service in Central America or elsewhere." Lutz Decl. ¶ 9. The CIA acknowledged and responded to this request by letter on February 24, 2010, assigning to the request Reference Number F-2010-00611. *Id.* ¶ 10. In this letter, Defendant CIA issued a *Glomar* response, refusing to confirm or deny the existence or non-existence of records responsive to Plaintiff's request. *Id.*; *see also Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (affirming CIA's

Renewed MSJ"); Pl.'s Notice of Non-Opposition to Defs.' Renewed Mot. for Summ. J., ECF No. [29] ("Pl.'s Notice of Non-Opposition").

use of the "neither confirm nor deny" response to a FOIA request for records concerning CIA's reported contacts with the media regarding Howard Hughes' ship, the "Hughes Glomar Explorer"). Plaintiff appealed the CIA's *Glomar* response in a letter dated April 8, 2010, and the CIA's Agency Release Panel denied the appeal on June 27, 2011. Lutz Decl. ¶¶ 11, 13.

On March 24, 2011, Plaintiff sent a second request to the CIA under the FOIA and the Privacy Act, requesting "all records about [Plaintiff] and [Plaintiff's] father indexed to [Plaintiff's] or [Plaintiff's] deceased father's name." *Id.* ¶ 14. Defendant CIA separated the requests pertaining to each individual and assigned the request for information pertaining to the Plaintiff as Request No. P-2011-00460. *Id.* ¶ 15. The CIA's search for records that might reflect an open Agency affiliation or otherwise acknowledge Agency affiliation existing through March 30, 2011 yielded no responsive records. *Id.* The CIA also asserted a *Glomar* response regarding any records that might "reveal a classified connection to the CIA." *Id.* Plaintiff appealed the adequacy of Defendant CIA's search and its *Glomar* response on May 12, 2011, and the CIA accepted this appeal on August 19, 2010. *Id.* ¶¶ 16, 20. In response to Plaintiff's appeal, the CIA searched its repository of records containing information about FOIA requests (CIA-14) and searched for any responsive records relating to the Plaintiff's FOIA requests predating March 30, 2011 – the date the CIA received and accepted Plaintiff's appeal. *Id.* ¶¶ 81-85.

Because the part of Plaintiff's second FOIA request to Defendant CIA requesting information pertaining to Harold W. Whitaker was duplicative of the request in No. F-2010-00611, it was incorporated into the processing of that earlier request, which was on appeal at the time. *Id.* ¶ 16.

**2. Department of State**

On January 3, 2008, Plaintiff submitted a FOIA and Privacy Act request to the Department of State, seeking "any and all investigative/travel records on file" relating to a "[m]issing airplane investigation report resulting from 10.03.80 flight gone missing over Spain with US citizen/pilot Harold William Whitaker and one other co-pilot." *See* Compl. ¶10; Defs.' MSJ, Ex. E (Declaration of Sheryl L. Winter, Director of the Office of Information Programs and Services of the United States Department of State) ("Walter Decl.") ¶ 4. The request was assigned Case Control Number 200800250. *Id.* ¶ 5. The Office of Information Programs and Services ("IPS") conducted a two-part search of its Central Foreign Policy records, resulting in the retrieval of 19 responsive documents for the first part, and two responsive documents for the second part. *Id.* ¶¶ 8-9. The first group of documents was released in full on June 22, 2009, and the second group was released in full on August 5, 2009. *Id.*

On July 31, 2008, Plaintiff submitted another FOIA and Privacy Act request to the Department of State seeking records related to:

> Harold William Whitaker . . . Including travel, visa, special requests, federal benefits, piloting or travel in aircraft, DISAPPEARANCE in DC-3 Aricraft [sic] over Spain on 3 October 1980, search, coordination with European governments in search, correspondence with Adelynn Hiller Whitaker (wife who is since deceased) issuance of a Certificate of Death, Insurance, enduring notification of aircraft wreckage requests, etc.

Compl. ¶ 11; Walter Decl. ¶ 10. This request was assigned Case Control Number 200904782. Walter Decl. ¶ 11. The IPS searched the Central Foreign Policy Records and Office of Passport Services for records responsive to this request. The Central Foreign Policy Records search yielded the 19 documents already disclosed in the first part of the search from Case Number 200800250, while the Office of Passport Services search yielded no responsive documents. *Id.* ¶¶ 13, 16.

4

On April 29, 2011, Plaintiff submitted a third FOIA and Privacy Act request to the Department of State, seeking records related to the Department's administrative processing of all his previous FOIA requests. Compl. ¶ 18; Walter Decl. ¶ 17. This request was assigned Case Control Number 201103392. Walter Decl. ¶ 18.

On January 20, 2012, Plaintiff submitted another FOIA and Privacy Act request to the Department of State, seeking "all records which were classified as 'non-responsive' or 'irrelevant'" in processing Request No. 200904872. Compl. ¶ 25; Walter Decl. ¶ 20. This request was assigned FOIA Case Control Number F-2012-21285. Walter Decl. ¶ 21. The IPS reviewed 10 documents responsive to this request, withholding two, releasing seven, and referring the remaining documents to another agency, from which it originated. *Id.* ¶ 22. Additionally, IPS conducted supplemental searches for responsive documents, which uncovered three documents that were released in part to Plaintiff. *Id.; see also* Defs.' MSJ, Ex. F (Declaration of Naomi J. Ludan, FOIA and Privacy Act Disclosure Specialist for the U.S. European Command) ("Ludan Decl.") ¶ 4.

**B. Procedural History**

On February 27, 2012, Plaintiff filed suit in this Court raising a variety of objections to the processing of his FOIA and Privacy Act requests by the Defendants. *See generally* Compl. Defendants subsequently filed their [5] Motion for Summary Judgment seeking to dismiss this case in its entirety. By Order and Memorandum Opinion issued March 10, 2014, the Court granted in part and denied in part this motion. *See* Order, ECF No. [24]; Mem. Op., ECF No. [25]. *See also Whitaker v. CIA*, No. 12-316, --- F.Supp.2d ---, 2014 WL 914603 (D.D.C. Mar. 10, 2014). As relevant here, the Court denied the motion without prejudice in three respects. First, the Court found insufficient Defendant CIA's invocation of FOIA Exemption (b)(3) pursuant to the CIA Act of 1949. *Whitaker*, 2014 WL 914603, at *5-7. Second, the Court found

5

that to the extent the CIA was withholding FOIA processing material pursuant to Exemption (b)(3) on the basis that these materials were themselves "intelligence sources and methods" within the meaning of the National Security Act of 1947, the Agency was applying this statute too broadly. *Id.* at *7-9. Third, the Court concluded that Defendant State Department was not entitled to summary judgment on the issue of the adequacy of its search because it had failed to search for records regarding Maj. Lawrence Eckmann in response to Plaintiff's FOIA requests. *Id.* at *13-15.

In response to these rulings, Defendants CIA and State Department have filed the present [28] Renewed Motion for Summary Judgment, in which Defendants represent that they have met the requirements set out in the Court's previous Order and Memorandum Opinion. In response, Plaintiff filed a [29] Notice of Non-Opposition to Defendants' Renewed Motion for Summary Judgment, indicating that, while he does not concede the validity of Defendants' legal arguments, he has elected not to contest Defendants' motion. Accordingly, Defendants' motion is ripe for review.

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, --- U.S. ----, 131 S.Ct. 1259, 1261-62 (2011). Ultimately, "disclosure, not secrecy, is the dominant

objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S.Ct. at 1262 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag. Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An agency also has the burden of detailing what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any nonexempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are obligated to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Defendants' present motion for summary judgment is unopposed. However, the Court notes that this is not sufficient by itself to grant the motion. *See Alexander v. FBI*, 691 F.Supp.2d 182, 193 (D.D.C. 2010) ("[E]ven where a summary judgment motion is unopposed, it is only properly granted when the movant has met its burden."). Accordingly, the Court will independently evaluate Defendants' motion, remaining cognizant of the fact that "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. DISCUSSION

#### A. CIA

The remaining challenges to the CIA's response to Plaintiff's FOIA and Privacy Act requests involve FOIA Exemption (b)(3). FOIA Exemption (b)(3) shields information "specifically exempted from disclosure by statute . . . if that statute" either (1) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, the CIA has invoked two statutes – the CIA Act of 1949

and the National Security Act of 1947 – in withholding documents pursuant to Exemption (b)(3). Lutz Decl. ¶¶ 40-42. In its previous Order and Memorandum Opinion, the Court found that the CIA appeared to be too broadly applying both of these statutes in withholding material from Plaintiff. *Whitaker*, 2014 WL 914603, at *5-9. In Defendants' present motion, the CIA has clarified the basis for withholding under each of these statutes and requests that the Court grant summary judgment in its favor.

### a. The CIA Act

Section 6 of the CIA Act states that "the Agency shall be exempted from the provisions of . . . any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. In its initial motion for summary judgment, the CIA invoked this provision as grounds for withholding pursuant to Exemption (b)(3), asserting that disclosure of certain information would impermissibly reveal the "functions" of the CIA. *See* Lutz Decl. ¶¶ 88, 92. The Court rejected this reasoning, agreeing with Plaintiff and other courts of this district that the CIA may not use the CIA Act to withhold all information related to the "functions" of the Agency. *Whitaker*, 2014 WL 914603, at *5-7. *See also Sack v. CIA*, No. 12-244, --- F.Supp.2d ---, 2014 WL 3375569, at *10 (D.D.C. July 10, 2014); *National Security Counselors v. CIA*, 960 F.Supp.2d 101, 174-85 (D.D.C. 2013). Rather, the use of the word "functions" is limited by the statutory phrase "of personnel employed by the Agency." Therefore, in light of the fact that the CIA had too broadly applied the CIA Act to withhold information pursuant to Exemption (b)(3), the Court ordered the CIA to either (a) disclose any otherwise non-exempt information to Plaintiff, or (b) along with any subsequent renewed motion for summary judgment, file a more sufficient

declaration and *Vaughn* index justifying the actual relationship between the withheld information and personnel functions of the CIA. *Whitaker*, 2014 WL 914603, at *7.

In Defendants' present filing, the CIA has met the requirements of this Court's previous Order and Memorandum Opinion. A Supplemental Declaration from Martha Lutz, Chief of the Litigation Support Unit of the Central Intelligence Agency, attached to Defendants' motion, states that "[t]he CIA Act has been invoked to protect the names and other information that would identify CIA personnel, such as their initials, email addresses, telephone numbers, and office locations." Defs.' Renewed MSJ, Ex. 1 ("Supplemental Declaration of Martha M. Lutz, Chief of the Litigation Support Unit of the Central Intelligence Agency") ("Second Suppl. Lutz Decl.") ¶ 5.[2] This declaration further states that "[t]his information clearly falls within the ambit of the statute because it would directly or indirectly reveal the identities of Agency personnel." *Id.* This Court has previously observed that "'the names of its employees, personal identifiers, official titles, file numbers, and internal organizational data' would all appear to be information relating to CIA personnel that could properly be withheld under the statute." *Whitaker*, 2014 WL 914603, at *6 (quoting *Schoenman v. FBI*, 841 F.Supp.2d 69, 84 (D.D.C. 2012)). Furthermore, Plaintiff has provided no argument that these materials do not relate to "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. Accordingly, the Court concludes that the CIA has properly applied the CIA Act in response to the Court's previous Order, and summary judgment on this issue is appropriate.

---

[2] This supplemental declaration from Martha Lutz differs from the supplemental Lutz declaration referenced in the Court's previous Memorandum Opinion. *See* Defs.' Reply, Ex. 1 (Supplemental Declaration of Martha M. Lutz, Chief of the Litigation Support Unit, Central Intelligence Agency) ("Suppl. Lutz Decl."). To distinguish between these two filings, the Court refers to the more recent supplemental declaration as the "Second Suppl. Lutz Decl."

### b. The National Security Act

The National Security Act of 1947 vests the Director of National Intelligence with the authority to protect "intelligence sources and methods." 50 U.S.C. § 3024. This provision authorizes withholding under Exemption (b)(3). However, in its previous Order and Memorandum Opinion, the Court concluded that to the extent that CIA was arguing that its processing materials for Plaintiff's FOIA and Privacy Act requests constitute "intelligence sources and methods" covered by the statute, it was applying the statute too broadly. *Whitaker*, 2014 WL 914603, at *7-9. To the extent that the CIA was asserting that the FOIA processing materials themselves contain intelligence sources and methods, these materials could be withheld. *Id.* at *8. Similarly, these materials could be withheld pursuant to the National Security Act if they discuss whether to disclose information *that would reveal intelligence sources or methods*. *Id.* Nevertheless, to the extent the CIA was asserting that the FOIA processing materials are themselves "intelligence sources and methods," the Court concluded that the Agency went too far. *Id.* As the Court previously stated, "the FOIA processing materials may contain intelligence sources and methods and thus may be withheld on the basis that their disclosure would reveal these intelligence sources and methods. However, they may not be withheld on the *ipse dixit* that they simply *are* intelligence sources and methods." *Id.* Accordingly, the Court ordered the CIA to either (a) disclose any otherwise non-exempt information to Plaintiff, or (b) along with any subsequent renewed motion for summary judgment, file a more sufficient declaration and *Vaughn* index which explained in greater detail why all of the information withheld pertains to intelligence sources and methods. *Id.* at *9.

In the materials offered in support of its renewed motion for summary judgment, the CIA "agrees that FOIA processing materials would not themselves constitute intelligence sources and

methods." Second Suppl. Lutz Decl. ¶ 7. However, the CIA now clarifies that "the CIA invoked the National Security Act to protect specific portions of the processing materials at issue because they discuss intelligence sources and methods, or contain information that would reveal these intelligence sources and methods." *Id.* The newly provided Lutz Declaration states (and the accompanying *Vaughn* index corroborates) that revealing the contents of these FOIA processing materials would function as an end-run around the CIA's *Glomar* response, which the CIA used in the first instance to protect intelligence sources and methods and which Plaintiff has not contested. *Id.* ¶ 8 ("The [*Glomar*] response is designed to protect from disclosure, *inter alia*, unacknowledged CIA sources, capabilities, authorities, interests, weaknesses, and resources."). As noted, the CIA previously issued a *Glomar* response, neither confirming nor denying whether it was in possession of records responsive to Plaintiff's FOIA requests. As the Lutz declaration explains, "[r]eleasing the results of the[] searches [taken in response to Plaintiff's requests] would reveal whether or not the CIA possesses material responsive to plaintiff's request. . . . Using the FOIA processing documents to achieve confirmation of what cannot be uncovered by the actual request would frustrate the purpose of the *Glomar* response." *Id.* ¶ 9. "Indications that responsive records exist would tend to reveal a classified association between the information requested by the plaintiff and the Agency" while "a lack of responsive material would tend to show that no such classification existed." *Id.* Therefore, "the CIA invoked the National Security Act to maintain the viability of the *Glomar* response and protect the intelligence sources and methods underlying that response." *Id.*

By providing this additional information, the CIA has met the requirements imposed by the Court's previous Memorandum Opinion and Order, as it has explained in greater detail why all of the information withheld pertains to intelligence sources and methods. As the Supreme

Court has made clear, the CIA has "very broad authority to protect all sources of intelligence information from disclosure." *CIA v. Sims*, 471 U.S. 159, 168-69 (1985). "Because of this 'sweeping power', courts are required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (citations omitted). "[I]t is the responsibility of the Director . . . , not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process." *Sims*, 471 U.S. at 180. *See also Linder v. Dep't of Defense*, 133 F.3d 17, 25 (D.C. Cir. 1998). Here, with the newly provided materials, the CIA has stated that the document processing materials either themselves discuss intelligence sources and methods or contain information that would *reveal* intelligence sources and methods which the CIA has sought to protect through its *Glomar* response. Second Suppl. Lutz Decl. ¶¶ 8-9. In light of the "great deference" afforded the CIA pursuant to this provision, the Court concludes that this material may be withheld pursuant to the National Security Act and Exemption (b)(3). Accordingly, summary judgment is appropriate as to this issue.

B.  **State Department**

In its previous Order and Memorandum Opinion, the Court concluded that the State Department performed an inadequate search for responsive records in response to Plaintiff's FOIA requests. *Whitaker*, 2014 WL 914603, at *13-15. Specifically, the search was inadequate because the State Department had not searched for records about Major Lawrence Eckmann, the co-pilot of the plane containing Plaintiff's father. The State Department now represents that it has searched for records relating to Maj. Eckmann as requested by Plaintiff and released the one document located in response to Plaintiff, thus curing the defects in its previous search. The Court agrees and grants summary judgment on this issue.

An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted). "At summary judgment, a court may rely on [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (quotations and citation omitted). "The agency cannot limit its search to only one or more places if there are additional sources 'that are likely to turn up the information requested.'" *Valencia-Lucena*, 180 F.3d at 326 (citation omitted). Ultimately, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted). *See also Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.") (emphasis in the original).

In response to the Court's previous Order, the State Department searched for documents mentioning Maj. Eckmann in all of its records systems reasonably likely to contain responsive records during the relevant time period. Defs.' Renewed MSJ, Ex. 2 (Decl. of John F. Hackett) ¶ 4. These repositories include the Central Foreign Policy Records and the Office of Passport Services, as well as the retired files of the Office of Overseas Citizens Services, the U.S. Embassy in Madrid, the U.S. Consulate General in Barcelona, the U.S. Embassy in Bonn, and the U.S. Consulate General in Stuttgart. *Id.* These searches resulted in the retrieval of one

responsive document, which was released to Plaintiff in full.[3] *Id.* ¶ 11. For his part, Plaintiff provides no argument as to the inadequacy of this search. Finding that the State Department has remedied the previous defects in its search for records, the Court grants summary judgment as to this issue.

### 3. Segregability

Finally, pursuant to its independent obligation to consider the issue of segregability, the Court is satisfied from the CIA's description of its review process that it has complied with its segregability obligations. According to Defendants, the CIA evaluated the documents potentially responsive to Plaintiff's request and determined that any documents responsive to Plaintiff's requests were exempt from disclosure in their entirety. *See* Second Suppl. Lutz Decl. ¶ 11 ("I have conducted page-by-page, line-by-line review of all of the documents at issue in this case and have determined that all reasonably segregable non-exempt information has been produced."). Again, as discussed, Plaintiff has raised no objection on this point. In addition, segregability concerns are of no moment with respect to the State Department, as the State Department released the one document located through its additional searches in its entirety. Accordingly, the Court does not find segregability concerns sufficient to deny summary judgment to Defendants.

---

[3] The State Department notes that this document is a "near-identical duplicate of [a] document . . . released to Plaintiff by letter dated August 5, 2009 in response to request number 200800250." *Id.* ¶ 11.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [28] Renewed Motion for Summary Judgment. Accordingly, this action is DISMISSED WITH PREJUDICE. An appropriate Order accompanies this Memorandum Opinion.

Dated: August 15, 2014

                                              /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge